# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                    Case No. 8:09-CR-411-T-30MAP

**PEDRO ALFONSO SANCHEZ-PAZ**
_____/

# ORDER

**THIS CAUSE** comes before the Court upon Defendant's Amended Motion to Suppress Any and All Physical Evidence and/or Statements (Dkt. #22) and the Government's Response thereto (Dkt. #25). Upon review and consideration, the Court determines that the Defendant's Amended Motion to Suppress should be denied.

The motion urges four grounds to support suppression of the evidence:

(1) the search was done without a search warrant,

(2) the evidence discovered and seized represents "fruit of the poisonous tree,"

(3) the search warrant affidavit failed to outline the veracity of the alleged confidential informant, and

(4) the search warrant obtained was illegal as it was issued as a result of material misrepresentations made to the issuing judge.

The Defendant's main contention is that an initial search of the property by an electric company employee was barred by the Fourth Amendment and, therefore, the subsequent

search warrant that was obtained was void because it was based on the "fruits of the poisonous tree." Defendant claims that the first search was illegal because the electric company employee was acting as an agent of law enforcement.

The facts are not in dispute. On August 13, 2009, Detective Theresa Edmiston received information from a detective in Broward County, Florida, that one of his confidential informants had told him that the residence at 3630 Twisted Oak Court in Lake Wales, Florida, was being used as a marijuana grow house and was stealing electricity by illegally tapping into the electrical line to bypass the electric meter. Further, the informant advised that the house at 3630 Twisted Oak Court was owned by Ray Moore who employed an individual on life parole to take care of the plants.

That same day Detective Edmiston contacted Tim Farrans, an employee of Progress Energy, and told him of the information she had received concerning the theft of electricity. Progress Energy is the electric utility company that supplies electricity to 3630 Twisted Oak Court. Progress Energy's rules and regulations on file with the Florida Public Service Commission authorized its agents to have access at all reasonable hours to the premises of a customer for the purpose of inspecting, installing, maintaining or reading the meter. See Florida Statute § 366.03.

That afternoon, at approximately 2:15 p.m., Farrans went to the residence at 3630 Twisted Oak Court where he met Detective Edmiston and Detective Alejandro Angulo. Farrans requested that Angulo accompany him onto the property. Detective Angulo put on an agency issued vest which displayed the word "Sheriff" in bold, yellow letters across the

front and rear. Detective Angulo then accompanied Farrans onto the property where they observed two pit bull dogs. Farrans went to the rear of the property to inspect for an illegal tap. Detective Angulo stopped at the southeast corner of the residence in order to observe both Farrans and the two pit bull dogs. After doing some digging, Farrans returned to Detective Angulo and reported that he had found a tap located underground below the meter.

As Farrans and Detective Angulo were exiting the property, the Defendant, Pedro Alfonso Sanchez-Paz, came out of the front door of the residence. Farrans informed Mr. Sanchez-Paz that he was with the power company and was checking the meter.

Subsequently, Detective Edmiston applied for a search warrant. In the affidavit supporting the request, she noted that, while at the residence, she had observed two air conditioning units cooling the house. She explained that multiple air conditioning units for a residence the size of the one in question was often an indicator of a cultivation operation. Further, she noted that she had checked the records of the Polk County Property Appraiser's office and identified Moore as the owner of the premises. A criminal records search verified that the Defendant was on federal parole until 2028. A search warrant was issued and a search pursuant to the warrant discovered growing marijuana plants and other evidence, all of which is the subject of the Motion to Suppress.

## **DISCUSSION**

Defendant claims standing to challenge Farrans' search, but sets forth no facts in this regard. He does not claim to have been in lawful possession of the property either as a renter or employee/caretaker. He merely claims that Farrans' search of the property triggered his

Fourth Amendment rights. Since his argument fails for other reasons, the Court will assume that Defendant was in lawful possession of the property and has standing to assert a Fourth Amendment right as to a search of it.

Defendant's primary contention is that Farrans was acting as an agent of the police when he entered the property and inspected the meter. He claims Farrans' search was illegal and the use of the discoveries made during the search renders the subsequent search warrant invalid.

The Fourth Amendment protection against unreasonable searches and seizures does not apply to a search by a private party unless he acts as an instrument or agent of the government. Courts look at two factors to determine whether a private person should be considered an agent of the government:

(1) whether the government knew of and acquiesced in the intrusive conduct, and

(2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends.

United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).

Here, law enforcement obviously knew of and acquiesced in Progress Energy's inspection of the meter at 3630 Twisted Oak Court. The inquiry then focuses on the second requirement, that is, whether in conducting the search Progress Energy was motivated by assisting law enforcement or by furthering its own legitimate interests.

Progress Energy has a legitimate business interest in ensuring that its electricity is not stolen. It has a lawful right to enter the premises of its customers to inspect and maintain its

meters and make sure that its meters are not being circumvented. It would not be unusual for these inspections to take place after receipt of a tip that electricity was being stolen, whether that tip comes from an anonymous citizen or from the police. When a tip is received from the police, Progress Energy's inspector does not thereby become an agent of the police.

Here, while Detective Angulo did enter upon the property, he did so only after Farrans requested Angulo to do so and went only so far as necessary to keep Farrans and the pit bulls in sight for Farrans' safety. This limited involvement on the part of Detectives Angulo and Edmiston does not make them participants in the search, or Farrans their agent.

The Ninth Circuit has encountered several cases that help clarify the circumstances in which a search by a private party will be deemed a government action:

> The presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate fourth amendment interests, especially where the private party has had a legitimate independent motivation for conducting the search. In United States v. Gomez, 614 F.2d 643 (9th Cir. 1979), this court ruled that the opening of a suitcase by an airline employee which apparently had been misplaced was a private search even though a county detective physically carried the suitcase to the employee's working area because of the airline's legitimate interest in identifying the owner of the luggage. In the same vein is United States v. Humphrey, 549 F.2d 650 (9th Cir. 1977), wherein the airline's interest in preventing fraudulent loss claims rendered an employee's search of an obviously damaged package private even though a police officer had suggested prior to the search that it would be a "good idea" to open the package. See also, Gold v. United States, 378 F.2d 588 (9th Cir. 1967). A search by a freight carrier, however, may be classified as governmental intrusion where carrier's employee engages in the search for the sole purpose of assisting the government. See Corngold v. United States, 367 F.2d 1 (9th Cir. 1966) (en banc).

United States v. Walther, 652 F.2d 788, 792 (9th Cir. 1981).

The Ninth Circuit has also decided a case very similar to the one before this Court. In United States v. Cleaveland, 38 F.3d 1092 (9th Cir. 1995), a power company received an anonymous tip that there was an illegal power diversion and a possible marijuana grow house at a particular residence. The power company passed the tip along to the police and asked that the police accompany its representative when he inspected the electric meter. The company "wanted the police to be present in the event the situation became dangerous, and if his inspection uncovered the likelihood of a power diversion, he wanted the police to be able to get a warrant to search the house to confirm the power theft." U.S. v. Cleaveland at 1093. A police detective accompanied the utility representative for the inspection, but waited in a parked car approximately one block away. The inspector found an illegal power diversion, notified the detective, and a search warrant was obtained. The warrant was executed that afternoon and a marijuana grow house was discovered. In concluding these facts did not make the electrical inspector an agent of the police, the court explained:

> While Sprague may have had dual motives for conducting the search--to recover money for PGE's loss of power on the one hand, and to assist the police in capturing the power thief (and perhaps uncovering a marijuana grow) on the other--his motive to recover for PGE's loss of power was a legitimate, independent motive apart from crime detection or prevention. That motivation was not overridden by the fact the police stood by during the search, and used the fruits of that search to obtain a warrant to search Cleaveland's house. (Citation omitted.)

United States v. Cleaveland, 38 F.3d 1092, 1094.

Likewise, this Court concludes that Farrans was operating under the legitimate business interest of Progress Energy when he conducted his search of the property to

determine whether in fact an illegal power diversion was occurring. The limited role of the two detectives did not make Farrans their agent. Therefore, Farrans' search was not a violation of the Defendant's Fourth Amendment rights and the subsequent search warrant obtained by Detective Edmiston was not the result of "fruit of the poisonous tree."

Defendant also argues in his Motion that the search warrant should fail because the affidavit given to secure the warrant failed to outline the veracity of the alleged confidential informant and contained material misrepresentations. These arguments fail as well. The affidavit contained sufficient verification of the information contained in the tip to support probable cause including the name of the owner of the house, the conditional release status of the alleged caretaker, and, the existence of the illegal electrical tap. This information was bolstered by information within the officer's own personal knowledge, to wit, the existence of multiple air conditioning units. U.S. v. Harris, 403 U.S. 573 (1971).

The material misrepresentations in the affidavit put forth by the Defendant are that Detective Edmiston stated she "made contact" with Farrans rather than saying she "solicited" Farrans to go to the property, and instead of saying that Farrans had "dug on the property and found the underground tap," she merely stated that "Farrans arrived at the property and attempted to evaluate the electricity usage." The Court concludes these statements are not misrepresentations, material or otherwise.

## **CONCLUSION**

Having determined that Farrans was not acting as the agent of law enforcement in discovering the illegal electrical tap and that there were no material misrepresentations made

to obtain the search warrant, the Motion to Suppress will be denied.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Amended Motion to Suppress Any and All Physical Evidence and/or Statements (Dkt. #22) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on November 24, 2009.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2009\09-cr-411.suppress 22.wpd